## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| GRACE TOLEDO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br> v.<br><br>WALMART INC.,<br><br>        Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Grace Toledo ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Walmart Inc. ("Walmart" or "Defendant").

### NATURE OF THE ACTION

1. This is a class action that arises out of Defendant's marketing and sales of textile fiber products that Defendant deceptively claims are "bamboo" or provide an environmental benefit (the "Products").

2. Defendant markets and sells textile fiber products throughout the United States on its websites and through brick-and-mortar stores.

3. Defendant manufactures, markets, and sells textile fiber products under its own private labels. Defendant also markets and resells textile products, which it purchases from vendors and/or suppliers ("non-private label products").

4. In advertisements for textile products marketed and sold on Defendant's website, www.walmart.com and www.samsclub.com, and on the labeling of the products themselves in-

store, Defendant makes or has made various claims concerning the bamboo content of those textile products.

### A.   "Bamboo" Fiber Claims

5.       On the www.walmart.com and www.samsclub.com websites, and on the labeling of the products themselves in-store, Defendant repeatedly claimed the textile fiber in retail products it markets and sells is "bamboo."

6.       For example, Defendant has marketed and sold a non-private label "Ottomanson Bamboo Luxury Bath Towel Set" that lists the fiber content as "100% Bamboo":





7.     Defendant also has marketed and sold a non-private label "Bamboo Sheets - Sweet Home Collection 1800 Series Deep Pocket 4 Piece Set":



8.     Defendant also has marketed and sold the non-private label "Pine & River Chilled Bamboo Cooling Weighted Blanket" and has described the product as "100% Bamboo cooling weighted blanket." The online description lists the fabric content as "Bamboo":





9.      Defendant also has marketed and sold the non-private label "LUXE Life 100% Organic Bamboo Washcloths for Babies and Adults" and has claimed the "washcloths are made from 100% natural bamboo fibers":





Features

Experience to the next level of luxury with our hypoallergenic, dye-free, organic bamboo wash cloths. LUXE Life® organic bamboo washcloths are made from 100% natural bamboo fibers which make it the ideal washcloth for babies or those with delicate and sensitive skin. Unlike cotton, organic bamboo washcloths do not yellow over time, so you can enjoy beautifully white and fresh washcloths. LUXE Life® organic bamboo washcloths are soft and durable for everyday use, making it the perfect gift. natural organic bamboo fibers hypoallergenic organic and dye free odoro resistant and antibacterial durable and versatile renewable and environmentally sustainable pack of 6 washcloths towel dispenser included

**B.  Environmental Benefit Claims**

10.     Defendant has made environmental benefit claims about the products it advertises as bamboo or rayon made from bamboo.

11.     As described above, Defendant has marketed and sold the non-private label "Pine & River Chilled Bamboo Cooling Weighted Blanket," claiming that it is "eco-friendly & sustainable" because it is made from bamboo.

12.     Defendant also has marketed and sold the non-private label "LUXE Life 100% Organic Bamboo Washcloths for Babies and Adults," claiming they are "renewable and environmentally sustainable" because they are made from bamboo.

13.     Defendant also has marketed and sold a non-private label "Sweet Home Collection Hypoallergenic Bamboo Memory Foam Pillow," claiming it is "eco-friendly" because it is made from bamboo:





14.     Defendant also has marketed and sold the non-private label "Leading Lady Luxurious Bamboo Nursing Sleep Bra" with the claim that it has a "unique eco-friendly fabric" because it is made from bamboo:





15.     Defendant also has marketed and sold, under its own private label, "Home Trends 300 Thread Count Bamboo Sheets," claiming, "In harmony with nature, silky soft bamboo sheets are environmentally friendly."

16.     Defendant also has marketed and sold a non-private label "Serenity Organic Self-Cooling Luxury Bamboo Comforter," claiming it is "Sustainable," noting that, "Our Serenity Bamboo Comforter will appeal to your sense of luxury and your desire to help the planet" because it is made from bamboo:



17.    Defendant also has marketed and sold, under its own private label, "No Boundaries – Juniors Eco-Friendly Stripe Tee Shirt," claiming, "For fashion that never goes out of style, go for eco-friendly products, like this tee shirt. Blend organic cotton with rayon crafted from bamboo and you get a cute and comfy tee that's all about sustainability."

### C.    Defendant's Textile Products Are Actually Rayon, Not Bamboo

18.    As defined by the Textile Act and Rules, many textile fiber products marketed and sold by Defendant as "bamboo," including all of the products shown and described above, are rayon, not actual bamboo fiber woven into fabric.

19.    Rayon is the generic name for a type of regenerated or manufactured fiber made from cellulose. Rayon is manufactured by taking purified cellulose from a plant source, also called a cellulose precursor, and converting it into a viscous solution by dissolving it in one or more chemicals, such as sodium hydroxide. The chemical solution is then forced through spinnerets and into an acidic bath where it solidifies into fibers.

20.    Manufacturers may use many different plants as cellulose precursors to make rayon, including cotton linters (short cotton fibers), wood pulp, and bamboo.  Regardless of the source of the cellulose, the manufacturing process involves the use of hazardous chemicals, and the resulting fiber is rayon – not cotton, wood, or bamboo fiber.  *See generally* 40 C.F.R. Part 63, Subpart UUUU ("National Emission Standards for Hazardous Air Pollutants for Cellulose Products Manufacturing").

21.    "[H]azardous air pollutants (HAP) emitted from cellulose products manufacturing operations" include carbon disulfide, carbonyl sulfide, ethylene oxide, methanol, methyl chloride, propylene oxide, and toluene. 40 C.F.R. § 63.5480.

22.    Pursuant to the Textile Act and Rules, advertising for textile products that references or implies fiber content must disclose the generic fiber names recognized or

established by the Commission and must not misrepresent fiber content. 16 C.F.R. §§ 303.15 & 303.16(a)(1).  Advertising for manufactured textile products composed, in whole or in part, of regenerated cellulose fiber must therefore use the generic fiber name, in this case, "rayon" or "viscose."

**D.     FTC's April 2022 Action Against Defendant**

23.     In April 2022, the FTC took action against Defendant for allegations that are substantially identical to this complaint.  *United States of America v. Walmart Inc.*, Case No. 1:22-cv-00965-JMC (D.D.C.).

24.      According to the FTC's complaint, Defendant's "misrepresentations or deceptive omissions of material fact" as described above constitute a violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce."

25.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

26.     On the same date that the FTC complaint was filed, Defendant entered into a stipulated order and judgment in which Defendant paid $3,000,000 as part of a civil penalty for these violations of federal law.

**E.     Earlier FTC Proceedings Concerning Textile Fiber Product Misrepresentations**

27.     In August 2009, the Commission announced three settlements and one administrative action against marketers who improperly labeled and advertised rayon textile products as "bamboo." In addition to publicly announcing these cases, the Commission issued a Business Alert to remind marketers of the need to label and advertise textile products properly,

and to clarify that "bamboo" is not a proper generic fiber name for manufactured rayon textile fibers. The Commission disseminated the press release announcing the four cases and the Business Alert widely throughout the marketplace.

28.     On January 27, 2010, the FTC sent Defendant a letter by express mail, informing Defendant that certain of its acts or practices in connection with the advertising and labeling of textile fiber products may violate the Textile Act and the Textile Rules and constitute unfair or deceptive acts or practices under Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1) (the "Warning Letter"). Specifically, the letter informed Defendant that the term "bamboo" can only be used in labeling or advertising a textile product made from fibers taken directly from the bamboo plant, without undergoing the chemical process necessary to make rayon, and that rayon must be described using an appropriate recognized term. The letter informed Defendant that failing to properly label and advertise textiles misleads consumers and violates both the Textile Rules and the FTC Act.

29.     Enclosed with the Warning Letter was a synopsis of previously litigated decisions issued by the Commission, as well as instructions to contact Commission staff or to visit the FTC's website at http://www.ftc.gov/bamboo to obtain complete copies of the Textile Act, the Textile Rules, and the Commission's Final Orders and Opinions in the proceedings described in the synopsis.

30.     As detailed in the synopsis enclosed with the Warning Letter, in a series of litigated decisions, the Commission determined, among other things, that both manufacturers and sellers of textile fiber products must comply with the Textile Act and the Textile Rules.  *See H. Myerson Sons, et al.*, 78 F.T.C. 464 (1971); *Taylor-Friedsam Co., et al.*, 69 F.T.C. 483 (1966); *Transair, Inc., et al.*, 60 F.T.C. 694 (1962).

31.     It is an unfair or deceptive act or practice to falsely or deceptively stamp, tag,
label, invoice, advertise, or otherwise identify any textile fiber product regarding the name or
amount of constituent fibers contained therein, *see Verrazzano Trading Corp.*, et al., 91 F.T.C.
888 (1978); *H. Myerson Sons, et al.*, 78 F.T.C. 464 (1971); *TaylorFriedsam Co., et al.*, 69 F.T.C.
483 (1966); *Transair, Inc., et al.*, 60 F.T.C. 694 (1962).

32.     It is a violation of Section 5 of the FTC Act, the Textile Act, and the Textile Rules
to advertise textile fiber products in a way that makes disclosures or implications of fiber content
while failing to set forth the required information as to fiber content as specified by Section 4(c)
of the Textile Act and in the manner and form prescribed by the Textile Rules.  *See Delco Carpet
Mills, Inc.*, 70 F.T.C. 1706 (1966).

33.     The Warning Letter also notified Defendant of its potential liability for civil
penalties under Section 5(m)(1)(B) of the FTC Act, 15 U.S.C. § 45(m)(1)(B), for knowingly
engaging in acts or practices determined by the Commission to be unfair or deceptive and
unlawful, as described in this Complaint.

34.     In January 2013, the Commission announced four settlements with large, national
marketers that received the Warning Letter and thereafter allegedly engaged in improper labeling
and advertising of rayon textile products as "bamboo."  The Commission announced these
settlements through a widely disseminated press release that reminded marketers of the Business
Alert it had previously issued regarding the need to label and advertise textile products, and
specifically "bamboo" products, properly.

35.     In December 2015, the Commission announced four more settlements with large,
national marketers that received the Warning Letter and thereafter allegedly engaged in improper
labeling and advertising of rayon textile products as "bamboo."  In addition to publicly
announcing these cases, the Commission sent letters to other retailers, including Defendant,

again reminding them about the prior bamboo cases and advising them to check their own inventories to ensure proper labeling and advertising of their textile products.  The press release announcing the four cases was disseminated widely throughout the marketplace.

36.     Since at least 2015, despite the FTC's public announcements and the Warning Letter, Defendant has sold rayon textile fiber products marketed and advertised as "bamboo," including by engaging in practices such as those described above.

37.     The practices described above are deceptive acts or practices in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), and violate the Textile Act and the Textile Rules.

38.     Defendant is violating laws enforced by the FTC by, among other things, engaging in unlawful acts and practices repeatedly over a period of at least five years, despite receipt of the Warning Letter.

## PARTIES

39.     Plaintiff Grace Toledo is a citizen of Massachusetts who resides in Boston, Massachusetts.  In or around November 2019, Ms. Toledo purchased a pillow Product (the "Product," or together with all similarly marked products, the "Products") marketed as being made "with Bamboo" from a Walmart Supercenter in Avon, Massachusetts, reasonably believing that it was made from fibers taken directly from the bamboo plant.   However, the Product Ms. Toledo purchased was not made with fibers taken directly from the bamboo plant.  Instead, the Product was made with rayon.  Ms. Toledo would not have purchased the Product, or would have paid significantly less for the Product, had she known that the Product was not made with bamboo fibers.

40.     Defendant Walmart Inc. ("Walmart") is a corporation with its principal place of business at 702 Southwest 8th Street, Bentonville, Arkansas 72716. Walmart transacts or has

transacted business in this District, including through its websites, www.walmart.com and www.samsclub.com, and through its retail stores. At all times relevant to this Complaint, acting alone or in concert with others, Walmart has participated in the acts and practices described in this Complaint, including advertising, marketing, distributing, or selling textile products to consumers throughout the United States.

## JURISDICTION AND VENUE

41.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

42.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events that gave rise to this cause of action occurred here.

43.     This court has personal jurisdiction over Defendant because a substantial portion of the events giving rise to this cause of action occurred here.  Plaintiff is domiciled and suffered her primary injury in this district.

## CLASS REPRESENTATION ALLEGATIONS

44.     Plaintiff seeks to represent a class defined as all consumers who purchased Defendant's textile products that were made with rayon but were marketed as being made with bamboo in the United States (the "Class").

45.     Plaintiff also seeks to represent a subclass defined as all Class Members who purchased Defendant's textile products that were made with rayon but were marketed as being made with bamboo in the state of Massachusetts (the "Massachusetts Subclass") (collectively with the Class, the "Classes").

46.     Subject to additional information obtained through discovery, the foregoing class definitions may be modified or narrowed by an amended complaint, or at class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

47.     Members of the Class and Massachusetts Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Massachusetts Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

48.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include but are not limited to whether Defendant's conduct constitutes unfair and deceptive business practices.

49.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff, like all class members, reasonably relied on Defendant's representation that her purchased Product was made with "bamboo" and suffered injury as a result of Defendant's uniform conduct.

50.     Plaintiff is an adequate representative of the Class and Massachusetts Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

51.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**Violation of the Massachusetts Unfair and Deceptive Business Practices Act,**
**Mass. Gen. Laws Ch. 93A *et seq.***

52.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

53.     Plaintiff brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendant.

54.     Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("93A")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."

55.     It is "the intent of the legislature that in construing" whether an act is deceptive under 93A § 2, "the courts will be guided by the interpretations given by the Federal Trade

Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."  *See* Mass. Gen. Laws Ann. ch. 93A, § 2.

56.     An act or practice is a violation of 93A if it "violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2."  940 CMR 3.16.

57.     Section 9 provides: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

58.     Pursuant to the definitions codified in Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by engaging in the purchase and sale of Products that directly or indirectly affect the people of Massachusetts.

59.     By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

60.     Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

61.     Defendant's acts and omissions are material, in that a reasonable person would attach importance to the misrepresentations and omissions described above and would be induced to act on the information in deciding to purchase the Products which are falsely

17

marketed as containing "bamboo," which reasonable consumers interpret to mean as "bamboo fibers."

62.     Defendant has also committed a violation of 93A predicated on its violations of FTC regulations – specifically, its violation of Section 5 of the FTC Act as interpreted by the Federal Trade Commission.

63.     Defendant has also committed a violation of 93A predicated on its violations of the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. § 70 *et seq.*, and the Rules and Regulations Under the Textile Fiber Products Identification Act, 16 C.F.R. Part 303.

64.     Defendant has also committed a violation of 93A predicated on its violation of the Magnuson-Moss Warranty Act, which is a federal consumer protection statute within the purview of M.G.L. c. 93A, § 2.

65.     Plaintiff and members of the Massachusetts Subclass reasonably relied upon and were deceived by Defendant's misrepresentations and omissions.

66.     Defendant's misrepresentations were made knowingly.

67.     Had Plaintiff and Massachusetts Subclass members known that the Products did not actually contain bamboo fiber, they would either not have purchased the Products, or would have paid less for them.

68.     Plaintiff and the Massachusetts Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the deceptive nature of the Products or would have paid substantially less for them.

69.     Plaintiff and members of the Massachusetts Subclass have been harmed by this injury, adverse consequence, and/or loss.

70.     93A represents a fundamental public policy of the Commonwealth of

Massachusetts.

71.     For each loss, Plaintiff and each member of the Massachusetts Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

72.     Because Defendant acted willfully or knowingly, Plaintiff and each member of the Massachusetts Subclass may recover up to three but not less than two times this amount.  In addition, Plaintiff may recover attorneys' fees and costs.

73.     Plaintiff and the members of the Massachusetts Subclass may also seek the imposition of an injunction which limits and polices Defendant's representations within or reaching Massachusetts.  The balance of the equities favors the entry of permanent injunctive relief against Defendant.   Plaintiff, members of the Massachusetts Subclass, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff, members of the Massachusetts Subclass, and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

74.     In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on February 21, 2023, Plaintiff's counsel served Defendant with written notice of its violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter sent by Plaintiff's counsel is attached hereto as **Exhibit 1**.  Defendant did not make a written tender of settlement for the putative class.

**<u>COUNT II</u>**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***

75.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

77.     The Products are each consumer products as defined in 15 U.S.C. § 2301(1).

78.     Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

79.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

80.     In connection with the marketing and sale of each and every one of the Products, Defendant expressly warranted that the Products were made with bamboo.  However, the Products were made with rayon, and thus did not contain "bamboo," which reasonable consumers interpret to mean "bamboo fibers."

81.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiff and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and members of the Classes.

82.     Plaintiff and members of the Classes were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products or would have paid significantly less if they knew the truth about the deceptive nature of the Products.

## COUNT III
### Unjust Enrichment

83.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

84.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

85.     Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Product.

86.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and Subclass Members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant falsely claimed that each of the Products were made with "bamboo," which reasonable consumers interpret to mean "bamboo fibers."  In reality, the Products were actually made with rayon and thus did not contain bamboo fibers.  These misrepresentations and omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Products if the true facts about the Products were known.

87.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**Fraud**

88.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

89.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

90.     As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Products.

91.     Specifically, Defendant indicated to Plaintiff and members of the Classes that the Products were made with "bamboo," which reasonable consumers interpret to mean "bamboo fibers," when the Products were actually made with rayon and thus did not contain bamboo fibers at all.  Defendant added this provision knowingly in order to encourage Plaintiff and members of the Classes to purchase the Products at inflated prices.

92.     These misrepresentations were made with knowledge of their falsehood.

93.     The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Product than they would have.

94.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Fraudulent Omission**

95.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

96.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

97.     This claim is based on fraudulent claims concerning the composition of the Product.  As discussed above, Defendant falsely claimed that the Product was made with "bamboo," which reasonable consumers interpret to mean "bamboo fibers," when the Products were actually made with rayon and did not contain bamboo fibers at all.

98.     The false and misleading omissions were made with knowledge of their falsehood.  Defendant is a nationwide general merchandise retailer and had previously been warned by the FTC that it was making false claims about the composition of the Products. Nonetheless, Defendant continued to sell textiles with false representations.

99.     The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase the Products.

100.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to damages and punitive damages.

<u>**COUNT VI**</u>
**Breach Of Express Warranty**

101.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

102.    Plaintiff brings this claim individually and on behalf of members of the Classes against Defendant.

103.    In connection with the sale of the Products, Defendant issued written warranties. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller expressly warranted that the Products were made with Bamboo.

104.    Defendant's express warranties and its affirmations of fact and promises made to Plaintiff and the members of the Classes regarding the Products became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

105.    The Products do not conform to the express warranties because they do not contain bamboo fibers.

106.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Products if they had known the truth about the lack of any bamboo in the Products; (b) they paid a price premium for the Products based on Defendant's express warranties; and (c) the Products did not have the characteristics, uses, or benefits as promised.

107.     As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as sold.

108.     On February 21, 2023, shortly after discovering the deceptive nature of the Products, Plaintiff sent a notice letter to Defendant consistent with U.C.C. 2-607(3)(A).  The letter was sent on behalf of Plaintiff and all other persons similarly situated.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the nationwide Class and the Massachusetts Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and the Massachusetts Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and the Massachusetts Subclass members;

b.     For an order declaring that Defendant's conduct violates the laws referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Massachusetts Subclass on all counts asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h.     For an order awarding Plaintiff and the Class and Massachusetts Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.


Dated:  March 30, 2023                     Respectfully submitted,


                                           **REARDON SCANLON LLP**

                                           By: */s/ James J. Reardon, Jr.*
                                                  James J. Reardon, Jr. (BBO #566161)

                                           James J. Reardon, Jr.
                                           45 South Main Street, 3rd Floor
                                           West Hartford, CT  06107
                                           Telephone: (860) 955-9455
                                           Facsimile:  (860) 920-5242
                                           Email:  james.reardon@reardonscanlon.com

                                           **BURSOR & FISHER, P.A.**
                                           Julian C. Diamond (*pro hac vice* forthcoming)
                                           Matthew A. Girardi (*pro hac vice* forthcoming)
                                           888 Seventh Avenue
                                           New York, NY 10019
                                           Tel:  (646) 837-7150
                                           Fax: (212) 989-9163
                                           E-Mail:  jdiamond@bursor.com
                                                   mgirardi@bursor.com

                                           *Attorneys for Plaintiff*